**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
ANTHONY BOBULINSKI and       :
STEFAN PASSANTINO,           :
                             :          Case No. _____
            Plaintiffs,      :
                             :          **COMPLAINT**
-v-                          :
                             :          **JURY DEMAND**
JESSICA TARLOV,              :
                             :
            Defendant.       :
-----------------------------------------------------------X

     1.     On March 20, 2024, Defendant Jessica Tarlov, a co-host on Fox News'

show, *The Five*, lied about Anthony Bobulinski and Stefan Passantino, saying that

Mr. Bobulinski's legal fees are being paid by a Trump Super PAC as recently as

January 2024. Ms. Tarlov said this in response to Mr. Passantino's representation of

Mr. Bobulinski during his appearance before the United States House of

Representatives Committee on Oversight and Accountability earlier that day. Ms.

Tarlov lied to achieve media headlines and ratings and to serve her political agenda

by deliberately besmirching the character of Messrs. Bobulinski and Passantino. The

assertion was unequivocally false and defamatory, and Plaintiffs demanded a

complete retraction and apology on March 21, 2024, and again on March 22, 2024.

Petulantly, Ms. Tarlov failed to retract and apologize, as is more fully addressed in

this Complaint. Accordingly, Messrs. Bobulinski and Mr. Passantino seek to hold

Defendant accountable for her malicious and knowing lies.

## PARTIES

2.     Plaintiff Stefan Passantino is an individual who is not a resident or citizen of the State of New York.

3.     Plaintiff Anthony Bobulinski is an individual who is not a resident or citizen of the State of New York.

4.     Defendant Jessica Tarlov is an individual who is a resident and citizen of the State of New York.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this cause of action pursuant to 28 U.S.C. § 1332 as there is complete diversity of citizenship, and the amount in controversy exceeds $75,000.

6.     Defendant is subject to personal jurisdiction because she is domiciled within the State of New York.

7.     This Court is the proper venue pursuant to 28 U.S.C. § 1391(b) as a substantial amount of events giving rise to this claim occurred within this District and Defendant resides within this District.

## FACTUAL BACKGROUND

### Background of Mr. Bobulinski

8.     Mr. Bobulinski is a decorated Navy veteran and successful businessman.

9.     For over six years, Mr. Bobulinski was an officer in the United States Navy's elite Naval Nuclear Power Training Command ("NNPTC") as a decorated

Master Training Specialist Instructor. He later served as the Command's Chief Technology Officer where he held a Q security clearance from the Department of Energy and from the National Security Agency. When he left NNPTC, Mr. Bobulinski was the top-ranked Direct Input Officer ("DIO") in the entire Command, as is documented in his final Navy Fitness Report ("FITREP").

10.     Mr. Bobulinski's awards and decorations include the Navy/Marine Corps Commendation Medal, the Navy/Marine Corps Achievement Medal, and the National Defense Service Medal.



11.     After his military service, Mr. Bobulinski became involved in business ventures and eventually met Joseph Biden in May 2017. Hunter Biden subsequently engaged Mr. Bobulinski as his business partner to serve as the CEO of SinoHawk Holdings, a company designed to find investments in the United States. Ultimately, a partnership was formed between the Chinese Communist Party/Chairman Ye through their surrogate, China Energy Company Limited ("CEFC"), a CCP-linked Chinese energy conglomerate, and the Biden family.

12.     Leaked emails eventually raised questions about whether Hunter Biden was profiting off his father's name when he was Vice President of the United States.

13.     The emails showed that Joseph Biden was aware of Hunter's business dealings with foreign nations and even personally benefited from them. They contradicted Joseph Biden's several prior assertions that he had no awareness of, or involvement with, his son's business dealings.

14.     An email dated May 13, 2017, discussed remuneration packages regarding a business deal with a now-bankrupt Chinese company proposing an equity split of "20" for "H" and "10 held by H for the big guy?"

15.     The reference to "the big guy" was used by James Gilliar to refer to Joseph Biden in emails to maintain confidentiality. Hunter Biden referred to his father as "my chairman."

16.     Mr. Bobulinski, who considers himself to be a political moderate and previously donated to members of the Democratic Party, decided to put principles above political party. He confirmed the veracity of the emails to the United States Senate and that Joseph Biden was aware of, and involved with, his son's business dealings with foreign nations, and that the Biden family, including Joseph Biden, accepted money from foreign nations.

17.     Indeed, Mr. Bobulinski came forward because of the lies Joseph Biden was telling about his involvement with his son's business dealings.

18.     Mr. Bobulinski confirmed that he saw, firsthand, that Hunter Biden would frequently go to his father for his approval or advice for various business deals.

19.     Additionally, during the course of their business relationship, Mr. Bobulinski grew concerned that Hunter Biden was using the Chinese company as his "personal piggy bank," and Mr. Bobulinski needed to take certain steps at the board level to minimize that risk.

20.     On March 20, 2024, Mr. Bobulinski was sworn in to testify before the United States House of Representatives Committee on Oversight and Accountability as to the conduct he witnessed by Joseph Biden, Hunter Biden, and Biden Family business associates. A photograph of that moment is depicted below. Mr. Bobulinski's attorney and co-Plaintiff, Stefan Passantino, is shown seated behind Mr. Bobulinski.



*Background of Mr. Passantino*

21.     After clerking for a judge on the U.S. District Court for the District of Maryland—who was subsequently raised to the U.S. Court of Appeals for the Fourth Circuit—Mr. Passantino worked at several prominent law firms. Chambers USA identified him as one of the leading political lawyers in the country. He is a co-author

of the Handbook on Corporate Political Activity and other works relating to political compliance matters.

22.     From January 2017 until August 2018, Mr. Passantino served as Deputy White House Counsel and was the top attorney managing federal compliance and government ethics matters. Following his time in the White House, Mr. Passantino returned to private practice by joining the firm Michael Best where he was the Practice Group Chair of Government Relations, Political Law and Public Policy.  Mr. Passantino also founded the law firm Elections LLC in 2019.

23.     In total, Mr. Passantino has had an unblemished and highly distinguished career as a lawyer with extensive experience handling sensitive ethical, political, and legal issues for high-profile clients.

24.     On March 20, 2024, Mr. Passantino represented Mr. Bobulinski before the United States House of Representatives Committee on Oversight and Accountability. It is a matter of fact that Mr. Passantino was paid solely by Mr. Bobulinski for his several years of previous representation, no differently than for his representation on March 20, 2024. Notably, no third parties have ever paid for any portion of Mr. Passantino's representation of Mr. Bobulinski.

### *Defendant's History*

25.     Defendant is a Democratic strategist employed by Fox News.

26.     Defendant first appeared on Fox News in 2014 and quickly became a recurring guest.

27.     In January 2022, Defendant became a co-host on the Fox News program, *The Five which* airs weekdays at 5:00 p.m. eastern time.

28.     *The Five* is the most-watched cable news program, having amassed 2,950,000 views in January 2024.[1]

### *Defendant's Lie*

29.     On March 20, 2024, shortly after Mr. Bobulinski's and Mr. Passantino's appearance before the United States House of Representatives Committee on Oversight and Accountability, and during the live taping of *The Five*, Defendant stated, "Ok, Tony Bobulinski's lawyers' fees have been paid by a Trump Super PAC. That's as recent as January."

30.     Defendant deliberately and maliciously made this comment, impromptu, in an attempt to discredit Mr. Bobulinski's testimony to the United States House of Representatives Committee on Oversight and Accountability and to besmirch the character of both Plaintiffs.

31.     By letter dated March 21, 2024, attached as Exhibit A, Plaintiffs demanded that Ms. Tarlov retract and apologize for her defamatory comments made the day prior.

32.     During an airing of *The Five* later that day, rather than making a complete retraction and apology, Ms. Tarlov said the following:

---

[1] Mark Mwachiro, *Here are the Cable News Ratings for January 2024*, ADWEEK NETWORK (Jan. 31, 2024), https://www.adweek.com/tvnewser/here-are-the-cable-news-ratings-for-january-2024/.

*I would like to clarify a comment I made yesterday during our discussion of Tony Bobulinski's appearance at the congressional hearing. During an exchange with my colleagues about the hearing, I said that Mr. Bobulinski's lawyer's fees have been paid for by a Trump Super PAC as recently as January. What was actually said at the hearing was that the law firm representing Mr. Bobulinski was paid by a Trump PAC. I have seen no indication that those payments were made in connection to Mr. Bobulinski's legal fees, and he denies that they were. Alright.*

33.     By letter dated March 22, 2024, attached as Exhibit B, Plaintiffs' counsel wrote, once again, to Fox News and to Ms. Tarlov that the attempted retraction was half-hearted, incomplete, and unacceptable.  She was given a second chance to remedy her defamatory comments.

34.     Specifically, Ms. Tarlov petulantly made it a point during the March 21, 2024, show to later state that her failed retraction attempt was a "clarification," not an apology. Furthermore, by saying, "What was actually said at the hearing," Ms. Tarlov left the wrong impression with the show's viewers, which was intentional. Specifically, she intended to convey the belief that it was a matter of determined fact resulting from the hearing, not merely part of a theatrical and nonsensical performance by a democrat representative who also sought to attack Plaintiffs as the source of the evidence, rather than address the evidence presented during the hearing, that Mr. Bobulinski's legal fees were being paid for by a Trump Super PAC and that Mr. Passantino's law firm secretly accepted funds from any source other than Mr. Bobulinski for his representation.

35.     Ms. Tarlov was aware at the time she made them that these false statements invoking President Trump would inflame a segment of the country against Mr. Bobulinski and Mr. Passantino and would falsely cause her viewers to disbelieve Mr. Bobulinski's sworn testimony.

36.     As a Democratic strategist, and consistent with a well-established pattern of hostile and malicious intent to defame the character and reputation of anyone associated with President Trump, such as Mr. Passantino, and anyone who dared speak up against the Biden family.

37.     It is a matter of fact that since 2020, when Mr. Bobulinski first started speaking publicly against the Biden family, he has spent over $500,000 of his own money on legal fees. Neither President Trump, nor any persons or entities affiliated with President Trump, have ever paid for any of Mr. Bobulinski's legal fees during this time.

38.     Additionally, Mr. Passantino's law firm did not accept any money from any PACs, Trump Super PACs or otherwise, for his representation of Mr. Bobulinski.

39.     Given that Defendant is a political operative and has a wealth of resources by virtue of working for a mass media company, Defendant was aware, more than most, that a Trump Super PAC was not paying Mr. Bobulinski's legal fees.

40.    On the same day of her initial defamatory remarks on *The Five*, Defendant reposted this article which was posted by the author at The Daily Beast, exemplary of her awareness and pattern of hostile and malicious intent against Plaintiffs:



41.    Payments from PACs are also available in public filings, none of which show a Trump-affiliated PAC paying for Mr. Bobulinski's legal fees.

42.    Despite this, Defendant's lies attempted to gain views, support her political party, and defame and undermine the character and credibility of Plaintiffs immediately after the Oversight Committee hearing, rather than the evidence presented.  The hearing dominated a news cycle lasting a series of weeks in 2024.

43.    This is not the first time Defendant has exhibited her malice for Plaintiffs. On February 21, 2024, on *The Five*, while discussing Mr. Bobulinski, Defendant stated: "This is the path that they've chosen to take, and honestly, I'm

surprised that they have this high of a threshold for humiliation. Every witness they have called has decimated their argument." She continued: "Even Senate Republicans have not found Tony Bobulinski to be credible, so, he gives a great cable news interview. I understand it's very compelling for people who want to believe Joe Biden is actually Gotti, a mob boss."[2]

44.     Thus, while these attacks are not new, Defendant has, once again, officially crossed a line by plainly lying about the funding of Mr. Bobulinski's legal fees. Her statements were patently false, extremely damaging, and maliciously defamatory to Plaintiffs. Ms. Tarlov's animosity toward Plaintiffs exhibits her malice that is completely divorced from any factual reality and further evidences her complete reckless disregard for the truth.

45.     Despite the falsity in Defendant's allegations, many took it be true. Shortly after Defendant's lies, several accounts on X (formerly Twitter) with over 100,000 followers began posting that Mr. Bobulinski's legal fees had been paid by a Trump PAC.[3]   Defendant's malicious objective to besmirch Plaintiffs had been achieved.

---

[2] Dan Gooding, *Fox News host eviscerates Republicans over 'embarrassing' Biden impeachment inquiry*, YAHOO NEWS! (Feb. 21, 2024), https://uk.news.yahoo.com/fox-news-host-eviscerates-republicans-231833724.html.

[3] *See* Ford News (@FordJohnathan5), X (Mar. 21, 2024, at 2:26 PM), https://twitter.com/FordJohnathan5/status/1770879776569340381 ("#BREAKINGNEWS Tony Bobulinski lawyer fees have been paid for by a Trump Super PAC called Save American. These payments have occurred from 2022 to January of 2024."); Outspoken TM (@Out5p0ken), X (Mar. 21, 2024, at 10:44 AM), https://twitter.com/Out5p0ken/status/1770823696619299019 ("Tony Bobulinski's lawyers fees have been paid by a Trump Super PAC.").

**CAUSES OF ACTION**
**COUNT I**
**(Defamation and Defamation *Per Se*)**
**As to All Plaintiffs**

46.     Plaintiffs incorporate by reference the above paragraphs as though set forth fully herein.

47.     On March 20, 2024, and again on March 21, 2024, Defendant defamed Messrs. Bobulinski and Passantino by claiming on *The Five* that, "Tony Bobulinski's lawyers' fees have been paid by a Trump Super PAC. That's as recent as January." Ms. Tarlov's attempted retraction the following day failed miserably and left the viewers with a negative impression of Plaintiffs, as more fully addressed herein.

48.     Defendant's assertions are categorically false.

49.     Defendant published the defamatory statements on live television, knowing that they were false or with reckless disregard for the truth. Given the public filings, as well as Defendant's experience in media and politics, it was obvious that Mr. Passantino was not being paid by a Trump Super PAC for his representation of Mr. Bobulinski, and that no Trump Super PACs had paid any of Mr. Bobulinski's legal fees. Thus, Defendant was also grossly irresponsible in publishing her lies.

50.     The defamatory statements constitute defamation *per se* as to Mr. Bobulinski because by claiming that Mr. Bobulinski's legal fees are being paid by a PAC, specifically a Trump Super PAC, Defendant sought to destroy his credibility, and it subjected him to hatred, distrust, ridicule, contempt, and/or disgrace by a certain segment of America and the world which lives in an alternate reality. The

statement inherently causes people to view Mr. Bobulinski as untrustworthy, by negatively implying that his testimony is bought and paid for without the assistance of any extrinsic evidence.

51.    The defamatory statements constitute defamation *per se* as to Mr. Passantino as well because they deliberately injured Mr. Passantino in his trade, business, or profession by indicating, in conspiracy-theory fashion, that Mr. Passantino was part of a scheme to present politically motivated and improperly paid-for tainted testimony in violation of his ethical duties. Again, the defamation *per se* does not require any extrinsic evidence.

52.    The defamatory statements have directly and proximately caused Messrs. Bobulinski and Passantino to suffer significant damages, including damage to their reputation, humiliation, embarrassment, and mental anguish, as well as their business ventures, and profession. These damages are long-lasting, and ongoing, and will be suffered in the future. These damages were foreseeable to Defendant.

53.    Defendant published the defamatory statements knowingly, intentionally, willfully, wantonly, and maliciously, with intent to harm Messrs. Bobulinski and Passantino, or in blatant disregard for the substantial likelihood of causing them harm and were part of a well-established malicious pattern by Defendant, thereby entitling Plaintiffs to an award of punitive damages.

54.    As a direct and proximate result of the misconduct of Defendant, Messrs. Bobulinski and Passantino are entitled to compensatory, special, and punitive

damages, in the sum of $10,000,000.00, or such greater amount as is determined by the jury.

## COUNT II
### (Defamation by Implication)
### As to All Plaintiffs

55.     Plaintiffs incorporate by reference the above paragraphs as though set forth fully herein.

56.     On March 21, 2024, in her failed attempt at a retraction, Defendant stated, "What was actually said at the hearing was that the law firm representing Mr. Bobulinski was paid by a Trump PAC."

57.     In doing so, Defendant intentionally omitted the context of the hearing.

58.     The full statement at the hearing to which Defendant referenced was made by Representative Jasmine Crockett (D), in which she stated: "Mr. Bobulinski, I know that you take exception to the fact that your credibility has been called into question over and over, do you know who Elections LLC is? … I'd ask unanimous consent to enter into the record a document indicating that the law firm representing Tony Bobulinski was paid $10,000 as recently as January of this year by the Save America PAC, which you may recognize as Donald Trump's PAC."

59.     Indeed, the full context of "what was actually said at the hearing" was a Democrat Representative attempting to discredit Mr. Bobulinski by nonsensically trying to tie together a true fact that the PAC has paid Stefan Passantino's firm, Elections LLC, in the past for work completely unrelated to Mr. Passantino's representation of Mr. Bobulinski, in an attempt to imply defamatory innuendo and

14

an understanding by the viewers that the Trump Super PAC was paying Mr. Passantino for his representation of Mr. Bobulinski.   In so doing, Defendant's defamation by implication sought to discredit both Mr. Bobulinski and Mr. Passantino.   Defendant was, nonetheless, invited to correct her error once again by simply making a full retraction and apology on *The Five* the following day, March 22, 2024.   She, and her employer, Fox News, declined to do so for obvious reasons.   The harm caused to Plaintiffs had been achieved and Defendant intended for it to remain unremedied.

60.     Defendant's omission of this context left a reasonable viewer with the impression that, at the hearing, there was a determination or allegation that a Trump Super PAC was paying for Mr. Bobulinski's legal fees.   Rep. Crockett, and Defendant, each achieved their desired impact with the words they chose: leave the viewer with the reasonably plausible and implied understanding that it may be true.   Defendant sought to qualify her statement by adding she has "seen no indication that those payments were made in connection to Mr. Bobulinski's legal fees."   However, saying this did nothing to dispel the negative impression left with the viewers that it may, in fact, be true even if Ms. Tarlov had not seen an indication that it was.   Failing to fully retract and apologize was defamatory to Plaintiffs.

61.     Defendant intentionally created the inference that there is actually concern that Mr. Bobulinski's legal fees are being paid by a Trump Super PAC, when, in fact, that is not actually in question.   All doubt as to Defendant's malicious intent to leave this question lingering in viewers' minds was removed when she doubled

down and refused to fully retract and apologize after Plaintiffs' counsel explained her mistake and gave her a second chance.

62.     The inference made is defamatory as it leads to hatred, distrust, ridicule, contempt, and/or disgrace for Messrs. Bobulinski and Passantino. Indeed, it caused not only a large segment of the nation which despises all things Trump regardless of reality, but also rational and reasonable viewers, not to trust or find credibility with Plaintiffs.

63.     Defendant made the statement with malice. She intended and endorsed the inference because she wanted to continue to discredit Mr. Bobulinski and Mr. Passantino in order to serve her personal political agenda, and the agenda of those with whom she associates politically.

64.     As a direct and proximate result of the misconduct of Defendant, Messrs. Bobulinski and Passantino are entitled to compensatory, special, and punitive damages, in the sum of $10,000,000.00 or such greater amount as is determined by the jury.

## COUNT III
### (Injurious Falsehood)
### As to Plaintiff Passantino

65.     Plaintiff incorporates by reference the above paragraphs as though set forth fully herein.

66.     Mr. Passantino is engaged in the practice of law as an attorney.

67.     Defendant's false statements, that Mr. Bobulinski's legal fees are paid for by a Trump Super PAC, directly in connection with Mr. Passantino's

representation of Mr. Bobulinski, directly concern Mr. Passantino's business by implying that Mr. Passantino is simply facilitating false testimony to Congress and/or is serving a particular political agenda.

68.     Defendant intended for her false statements to destroy Mr. Passantino's reputation, to ruin his ability to practice law and to harm him financially. Defendant reasonably recognized and intended that the publication of her statements about Mr. Passantino would result in pecuniary losses to him and to his law firm and partners.

69.     Mr. Passantino has suffered direct pecuniary losses as a result of Defendant's accusations, including costs associated with lost business opportunities and money spent to protect and defend against Defendant's attacks on his own reputation, in the sum of $10,000,000.00, or such greater amount as is determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Anthony Bobulinski and Stefan Passantino respectfully request this Court to enter a judgment in their favor and grant relief against Defendant as follows:

a.   An award of compensatory, special, and punitive damages of thirty million dollars ($30,000,000.00);

b.   An award of Plaintiffs' costs associated with this action, including but not limited to their reasonable attorneys' fees and expenses; and

c.   Such other and further relief as the Court deems just and appropriate to protect Plaintiffs' rights and interests.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all issues so triable.


Dated: March 28, 2024                    ATHONY BOBULINSKI AND
                                         STEFAN PASSANTINO

                                         *By Counsel*


                                         Respectfully submitted,

                                         /s/ Jesse R. Binnall
                                         Jesse R. Binnall (*pro hac vice*)
                                         John C. Sullivan (*pro hac vice*)
                                         Jared J. Roberts (*pro hac vice*)
                                         BINNALL LAW GROUP, PLLC
                                         717 King Street, Suite 200
                                         Alexandria, Virginia 22314
                                         Phone: (703) 888-1943
                                         Fax: (703) 888-1930
                                         Email: jesse@binnall.com
                                                jcs@binnall.com
                                                jared@binnall.com

                                         *Counsel for Plaintiffs*