UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANTHONY BOBULINSKI, *et al.*,

                      Plaintiffs,

-v-

JESSICA TARLOV,

                      Defendant.

24-CV-2349 (JPO)

MEMORANDUM
AND ORDER

---

J. PAUL OETKEN, District Judge:

On November 26, 2024, this Court dismissed Plaintiffs Anthony Bobulinski's and Stefan Passantino's complaint against Defendant Jessica Tarlov, pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See Bobulinski v. Tarlov*, No. 24-CV-2349, 2024 WL 4893277, at *2-11 (S.D.N.Y. Nov. 26, 2024). The Court also concluded that the complaint lacked a "substantial basis in fact and law," and that Tarlov was thus entitled to attorney's fees under New York's anti-SLAPP statute. *Id.* at *16 (quoting N.Y. Civ. Rights Law § 70-a(1)).

Before the Court is Tarlov's application for attorney's fees and costs. For the reasons that follow, the application is granted in full.

**I.  Background**

The Court assumes familiarity with the factual and legal background of this case, which is described in this Court's November 26, 2024 Opinion and Order. *See id.* at *1-3. Relevant here, Tarlov's employer, Fox News Network, LLC ("Fox"), retained and paid Torridon Law PLLC ("Torridon") to represent Tarlov in this action. (*See* ECF No. 37 ("Fee App.") at 9.) Tarlov now seeks to recover $331,859.26 in attorney's fees and $1,815.40 in costs, for a total of $333,674.66. (*Id.* at 7.)

Tarlov filed an application for attorney's fees and costs on December 20, 2024 (Fee App.), attaching the invoices of fees Torridon charged Fox from April 2024 through October 2024 (ECF No. 38-1 ("Invoices")). Defendants opposed the application on January 29, 2025 (ECF No. 42 ("Opp.")), supporting their briefing with the expert testimony of Ronald Coleman, a retired partner of and currently "of counsel to the Dhillon Law Group" (ECF No. 43 ("Coleman Dec.") ¶ 1). Tarlov replied on February 5, 2025. (ECF No. 44 ("Reply").)

## II.    Discussion

When an action is dismissed pursuant to New York's anti-SLAPP statute, a successful defendant may collect "costs and attorney's fees." N.Y. Civ. Rights Law § 70-a(1). Though neither the New York Court of Appeals nor the Second Circuit has set a test for calculating costs and attorney's fees under this statute, the Court agrees with lower state courts, *see, e.g.*, *Isaly v. Garde*, 213 N.Y.S.3d 852, 864 (N.Y. Sup. Ct. Feb. 13, 2024), and both parties (Fee App. at 4; Opp. at 5-6), that the lodestar method is an appropriate starting point.

The lodestar is "the product of a reasonable hourly rate and the reasonable number of hours required by the case," and it "creates a 'presumptively reasonable fee'" award. *Millea v. Metro-North R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Assoc. v. Cnty. of Albany*, 522 F.3d 182, 183 (2d Cir.2008)). "[T]he fee applicant bears the burden of . . . documenting the appropriate hours expended and hourly rates." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

### A.    Hourly Rate

"The presumptively reasonable fee boils down to what a reasonable, paying client would be willing to pay, given that such a party wishes to spend the minimum necessary to litigate the case effectively." *Trustees of N.Y.C. Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Vision Constr.*

*& Installation, Inc.*, No. 24-CV-2503, 2024 WL 2963729, at *4 (S.D.N.Y. June 12, 2024) (*quoting Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 174 (2d Cir. 2009)). One consideration is "the quality of an attorney's performance." *Millea*, 658 F.3d at 167 (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010)). And another is the prevailing market rate in this District for "similar services by lawyers of reasonably comparable skill, experience and reputation." *Vision Constr.*, 2024 WL 2963729, at *4 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

Plaintiffs do not challenge the reasonableness of any of the hourly rates that Tarlov's counsel and paralegal charged while working on this case (Opp. at 5),[1] and the Court agrees with Tarlov that the Torridon rates are all reasonable. Patrick Philbin, who was the lead partner on the case (ECF No. 38 ("Philbin Dec.") ¶ 1) and argued the motion in front of this Court, charged an hourly rate of $1,338.75. (Fee App. at 8.) Philbin has one of the most impressive resumes a litigator could have. He graduated *magna cum laude* from Harvard Law School, clerked for a circuit judge on the United States Court of Appeals for the D.C. Circuit and a justice on the United States Supreme Court, and has had a "30-plus-year career" practicing law, including "a number of senior government positions." (*Id.*) The second partner on the case, Brett Katz, who received his juris doctor degree in 2010, charged $807.50 per hour. (*Id.* at 9.) Meanwhile, the two associates on the case charged $722.50 and $637.50 per hour. (*Id.*) These attorneys all had federal clerkships after law school and have been out of law school for at least eight years.

---

[1] In fact, Ronald Coleman, the expert retained by Plaintiffs, states that "the professional bona fides of the Torridon attorneys who are reported to have worked on Defendants' anti-SLAPP motion are beyond cavil. Their experience and credentials are stellar. Their respective hourly rates are, based on my familiarity with the field, commensurate with those charged by elite law firms that serve public companies and their like in New York City and Washington, DC." (ECF No. 43 ¶ 5.)

Meanwhile, the team's paralegal, who boasts fifteen years of experience in the industry, charged $297.50 per hour. (*Id.*)

These rates track what other judges and magistrate judges in this District have determined to be "reasonable" for top law firms in recent years.[2] In 2023, Magistrate Judge Lehrburger, in a Report and Recommendation adopted by Judge Gardephe, reduced White & Case LLP's hourly rates by 20% due to a lack of information about individual attorney qualifications, but those 2023 reduced rates still mirror what Torridon charged Fox for Tarlov's defense. *See Wells Fargo Tr. Co., N.A. v. Fast Colom. S.A.S.*, No. 23-CV-603, 2023 WL 8591953, at *6-9 (S.D.N.Y. Oct. 16, 2023) (Lehrburger, Mag. J.), *report and recommendation adopted*, No. 23-CV-603, 2023 WL 8433128 (S.D.N.Y. Dec. 5, 2023). In that case, Magistrate Judge Lehrburger and Judge Gardephe approved White & Case's lead partner billing $1,400 an hour, lower-level partners billing over $1,000, associates billing over $900 an hour, and a legal assistant billing over $400. *See id.*

And last year, Magistrate Judge Willis approved the 2023 rates of two partners at Davis Polk &Wardell LLP billing $1,760 and $1,440 per hour, as well as their associates (who Judge Willis noted had completed federal clerkships, like the two in this case) billing $895 an hour. *An v. Despins*, No. 22-CV-10062, 2024 WL 1157281, at *2 (S.D.N.Y. Mar. 18, 2024) (Willis, Mag. J.).

---

[2] Plaintiffs do not challenge the stature of Torridon, which is a Washington, D.C. based "boutique litigation firm . . . [f]ounded by former Attorney General William Barr," and whose attorneys include "the former general counsels of three Fortune 50 companies, two former White House Counsels, two former Deputy White House Counsels, two former U.S. Attorneys, and numerous attorneys with experience at major international law firms." (Philbin Dec. ¶ 6.) It is appropriate to compare an elite boutique like Torridon to the likes of "big law" firms such as White & Case LLP and Davis Polk & Wardell LLP.

It is also worth noting that Torridon charged Fox fifteen percent less than "the standard rates Torridon charged [its other clients] for each biller during that period." (Fee App. at 9.) "Courts in this District have recognized that an attorney's customary billing rate for fee-paying clients is ordinarily the best evidence of a reasonable hourly rate." *Doe 1 v. E. Side Club, LLC.*, No. 18-CV-11324, 2023 WL 4174141, at *6 (S.D.N.Y. June 23, 2023) (quotation marks omitted) (collecting cases), *aff'd sub nom. Derek Smith L. Grp., PLLC v. E. Side Club, LLC*, No. 23-1015, 2024 WL 1756106 (2d Cir. Apr. 24, 2024) (summary order). And Fox "has paid, or approved for payment" the hours for which Torridon billed them at the rates Tarlov now seeks to recover from Plaintiffs. (Fee App. at 9-10); *see id.* ("The reasonableness of the . . . rates is further confirmed by the fact that those are the rates that were actually charged to and paid by Defendants.").

Because Tarlov has provided sufficient information to convince the Court of her counsel's qualifications and experience, her attorneys' rates remain below fee awards in this District in recent years, and Fox agreed to pay Torridon at these rates, the Court agrees that Torridon charged reasonable hourly rates for its representation in this case.

**B.    Number of Hours**

In determining the reasonableness of hours billed for a particular case, a district court may consider factors such as "[t]he novelty and complexity of [the] case." *Millea*, 658 F.3d at 167 (quoting *Perdue*, 559 U.S. at 553).

Tarlov's counsel charged Fox for 354.1 hours of work defending Plaintiffs' action. (Fee App. at 6.) Plaintiffs challenge this number, arguing that the hours Torridon billed were "excessive" and that the firm's "billing was opportunistic" and "duplicative." (Opp. at 7.) Plaintiffs also identify specific charges to which they object: the expenses of having four

attorneys attend oral argument and the expenses for "post-argument debriefing," that they allege "added nothing to the legal issues of the case." (*Id.* at 8.)

      First, the Court disagrees with Plaintiffs that Torridon billed an "excessive" number of hours to prepare for a motion to dismiss. Plaintiffs argue that Tarlov's counsel did not need to conduct a thorough review of New York defamation law because the common defenses to defamation claims "have been advanced . . . for generations." (Opp. at 6 (quoting Coleman Dec. ¶ 8).) However, defending against Plaintiffs' defamation accusations was not so straightforward as Plaintiffs make it out to be. Tarlov's incorrect statement that the Save America PAC was paying Bobulinski's legal fees raised several novel questions, such as whether mere stated association with the former (and now current) President of the United States could be defamatory and whether accusing an attorney of accepting PAC funding he had previously accepted could be grounds for a defamation claim. *See Bobulinski*, 2024 WL 4893277, at *4-5. Further, given the high stakes of this kind of defamation case, where significant money and the reputations of Fox and Tarlov are on the line, coupled with the underlying fear of media outlets like Fox concerned about creating case law that would be harmful to their commentators' free speech on-air in the future, the Court is not persuaded that 354.1 hours of preparation was unwarranted.

      And even if 354.1 hours were excessive for a motion to dismiss raising classic defenses to defamation claims, Plaintiffs' argument ignores the fact that Tarlov also briefed the Court on the complicated and underdeveloped question of the applicability of Section 70-a of New York's anti-SLAPP statute in federal courts. (*See* Reply at 7-8.) As Tarlov points out, her counsel could not have "merely copied and pasted the same arguments that have failed in other cases arguing for application of Section 70-a"; instead, they had to develop a novel approach and conduct sufficient research to support their arguments. (*Id.* at 8.)

Finally, though no federal court in this Circuit has yet to award fees on a New York anti-SLAPP motion, other federal courts outside this Circuit have found similar hour-counts reasonable in anti-SLAPP cases. (*See* Reply at 8-9.) Judge Miller of the Southern District of Texas approved the expenditure of 328 hours for defendant Free Radio Asia, which moved to dismiss a defamation suit that triggered Texas's anti-SLAPP statute. *See Tu Nguyen v. Duy Tu Hoang*, No. 17-CV-2060, 2018 WL 8732490, at *8-9 (S.D. Tex. Oct. 19, 2018). And Judge Wilson of the Central District of California approved 416.88 hours[3] for defendant Universal City Studios LLC ("Universal"), which filed a motion to dismiss, a reply, and a motion for fees in a suit involving California's anti-SLAPP statute. *See Woulfe v. Universal City Studios LLC*, No. 22-CV-459, 2024 WL 1110914, at *9-10 (C.D. Cal. Feb. 8, 2024). Though Plaintiffs argue that *Woulfe v. Universal City Studios LLC* involved more briefing and hearings than the case at hand (Opp. at 10-11), the court in *Woulfe* ultimately approved significantly more hours than Tarlov is asking for here, *see* 2024 WL 1110914 at *9-10, and, importantly, Universal did not have to make the novel argument that California's anti-SLAPP statute should apply in federal court, because that was settled Ninth Circuit law. *See CoreCivic, Inc. v. Candide Grp., LLC*, 46 F.4th 1136, 1140 (9th Cir. 2022) ("In 1999, we . . . held that California's anti-SLAPP statute applied in federal diversity actions because there was no direct collision between the statute and the relevant federal rules, and the twin purposes of *Erie* favored its application." (cleaned up)).

The Court also disagrees with Plaintiffs' contention that Torridon's billing practices were "duplicative" and "opportunistic." The crux of Plaintiffs' argument is that Philbin, as the

---

[3] The court reduced the requested 521.1 hours by 20% (which comes to 416.88 hours) because it determined that while the legal issues involved "were numerous, they should have been issues with which Defendant's counsel was familiar." *Woulfe*, 2024 WL 1110914, at *9-10.

highest-billing partner on the project, billed too much time for oversight and redrafting of the work his two associates produced. (*See* Opp. at 8.) Coleman suggests that, based on the number of hours billed by Philbin, he used this case to "train[]" the two associates. (Coleman Dec. ¶ 16).) While the Court counts fourteen time entries over a seven-month period where Philbin revised either the outline for the motion to dismiss, the motion itself, the reply, or other administrative documents (*see* Invoices at 2-22), that amount of work by a lead partner is not unusual, especially at a boutique litigation firm, where leanly staffed teams are common. This revision and redrafting by the most qualified and experienced member of the team was clearly acceptable to Fox, which "has paid, or approved for payment" these fees. (Fee App. at 9-10.)

Finally, the Court disagrees with Plaintiffs' objections to the specific line-item charges for four attorneys to attend oral argument and for "post-argument debriefing." As for attorney attendance at oral argument, the Torridon invoice indicates that Mr. Philbin was the only attorney who billed his time for attending and arguing the motion to dismiss. (Invoices at 21-22; *see also* ECF No. 30 (scheduling oral argument for October 24, 2024).) Further, only two Torridon attorneys attended the oral argument: Philbin and Katz; the other two attorneys were in-house from Fox, and thus their time and expenses were not billed. (Reply at 6 n.1.) And while Torridon charged Fox $1,349.71 for transportation to and from New York, a hotel stay, and a meal for its two attorneys (Invoices at 22), such a price tag is—alas—hardly unusual in New York City.

Plaintiffs also object to the 0.20 hours billed by Philbin for a "[t]elephone conference with J. Tarlov" a day after oral argument as well as the 0.60 hours billed by Katz for "[r]eview. . . of oral argument and forward[ing] to internal team" the following week, arguing that Torridon may not collect fees for expenses incurred after the submission of all briefs and the

8

end of oral argument. (Opp. at 8; *see also* Invoices at 22.) However, the Court agrees with Tarlov's reading of Section 70-a (*see* Reply at 6), which does not say anything about limiting attorney's fees to fees incurred during the briefing schedule or before oral argument has been held. *See* N.Y. Civ. Rights Law § 70-a(1); *see also Golan v. Daily News, L.P.*, No. 151135/2022, 2023 WL 5900247, at *2 (N.Y. Sup. Ct. Sept. 11, 2023) (approving "fees on fees" for billable hours accrued after the lower court decided the motion to dismiss). After all, it would be entirely reasonable to give clients an update (in a mere twelve-minute phone call) about what occurred at oral argument; and reviewing and distributing the transcript is a reasonable task to prepare for any further briefing the Court could order after oral argument. All of these line items are within the realm of "fees associated with defending this action." *See InkMango, Inc. v. Warren*, No. 152802/2024, 2024 WL 4802367 at *5 (N.Y. Sup. Ct. Nov. 8 2024) (reading Section 70-a to include any "associated" fees).

Because Torridon's hourly rates and hours billed are reasonable, it follows that the lodestar of $331,859.26 for attorney's fees and $1,815.40 in costs is within reason as well. Tarlov is thus entitled to the total amount of $333,674.66.

### III.  Conclusion

For the foregoing reasons, Defendant's application for attorney's fees and costs is GRANTED. Plaintiffs are hereby ordered to pay Defendant the amount of $331,859.26 in attorney's fees and $1,815.40 in costs, for a total of $333,674.66.

SO ORDERED.

Dated: March 20, 2025
      New York, New York

_____
J. PAUL OETKEN
United States District Judge